## COURT OF APPEALS.

BOARD OF COMMISSIONERS OF EXCISE OF TOMPKINS COUNTY, respondents agt. JAMES B. TAYLOR and JOHN C. McWHORTER, appellants.

" Whoever shall sell any *strong* or *spirituous liquors* or *wines* in quantities less than five gallons at a time, without having a license therefor, granted as herein provided, shall forfeit fifty dollars for each offence." (*Laws* 1857, *ch.* 628, § 13.)

*Held,* that *ale* or *strong beer* are included in this section, as embraced in the terms *"strong or spirituous liquors"* expressed therein.

*It seems* that the line of distinction to be drawn between the different kinds of liquor containing alcohol, in order to determine upon which of them the statute was intended to operate, is, between those which are capable of causing intoxication, and those containing so small a per centage of alcohol that the human stomach cannot contain sufficient of the liquid to produce that effect.

*June Term,* 1860.

APPEAL from the supreme court and submission without action, under section 372 of the Code of Procedure. The stipulation containing the facts agreed upon, states that " the defendants, on the 3d day of October, 1859, at their store in Ithaca, without having a license to sell any strong or spirituous liquors or wines, sold strong beer in a quantity less than five gallons, to wit: a glass of strong beer to Mr. J. R. Smith, to be drunk in their store or shop, and which was drunk in their said store."

The defendants claimed that they had a right to sell such glass of strong beer without a license. The plaintiffs claimed that the defendants had no such right, and that by such sale they had forfeited the sum of $50, and were liable for such sum to the plaintiffs.

The supreme court at general term in the sixth district rendered judgment on the submission in favor of the plaintiffs for $50, with costs. The defendants appealed to this court.

The case was submitted on printed arguments.

FERRIS & DOWE, *for appellants.*
DANA, BEERS & HOWARD, *for respondents,*

WELLES, J. The law upon which the judgment in the court below was founded is the 13th section of the act, entitled "An act," &c.

That section is in the following words: "Whoever shall sell any strong or spirituous liquors or wines, in quantities

less than five gallons at a time, without having a license therefor granted as herein provided, shall forfeit fifty dollars for each offence."

The only question to be decided is, whether strong beer is embraced in the terms strong or spirituous liquors, as expressed in the section referred to.

In the case of *Nevin* agt. *Ladue*, (3 *Denio R.*, 43,) it was held that ale and strong beer were included in the terms " strong or spirituous liquors," as used in the excise law of the Revised Statutes (1 *R. S.*, 680, § 15,) making it penal to sell such liquors in quantities less than five gallons without a license. The section of the Revised Statutes referred to is identical with section 13 of the act of 1857, above recited, excepting that in the former the penalty for such sale was $25, and in the latter it is $50.

The case of *Nevin* agt. *Ladue* was afterwards taken to the court of errors (3 *Denio*, 437,) where the judgment of the supreme court was reversed, on the ground that upon the trial before the justice where the action was originally commenced, the judgment was rendered against Nevin on his confession that he had sold ale or strong beer or fermented beer without a license. He was charged before the justice with having sold ale, strong beer, or fermented beer, and he confessed the charge. The court of errors held that the term fermented beer might have well been understood by Nevin to mean some one of the various kinds of beer which had long been in use in this country, under the different names of spruce beer, ginger beer, molasses beer, &c., none of which could properly be termed strong beer or included in the words of the statute, " strong or spirituous liquors," and all of which had undergone, to some extent, the process of fermentation; and, therefore, as the charge confessed was of selling only one of three kinds of liquor, to wit: ale or strong beer, or fermented beer, the charge and confession might as well have relation to the latter as to either of the others, and being

thus in the alternative, did not prove the sale of either one in particular.

The only opinion reported in the court of errors was by Chancellor WALWORTH, who after an elaborate examina-tion of the question, holds decidedly, that ale and strong beer were both included in the words strong liquors, and that both were within the prohibition of the statute. But for the reasons stated before, he was in favor of reversing the judgment.

The report of the case states that Senators BURTON, SPENCER, and WRIGHT delivered written opinions for rever-sals on the ground that the question whether the sale of ale or strong beer was prohibited by the statute did not arise; it not being shown, as they construed the return of the justice, that the defendant had sold such liquors. But their opinions are not reported. It does not appear that any member of the court expressed any dissent from the views of the chancellor. The case, especially as decided by the supreme court, is an authority directly in point in sup-port of the judgment below in the case under consideration.

In the case of the *People* agt. *Wheelock,* (3 *Parker Cr. R.,* 9,) it is even held that the word " beer," in its ordi-nary sense, denoted a beverage which is intoxicating, and was within the meaning of the words "strong and spirit-uous liquors," as used in the Revised Statutes. That case was decided at a general term of the supreme court, in the 7th district, in March, 1855. There may seem to be, at first view, a discrepancy between the case last referred to and that of *Nevin* agt. *Ladue,* inasmuch as the latter holds that the sale of " fermented beer " is not prohibited, and in the former " beer " is held to be within the prohibition of the statute. But this apparent discrepancy disappears when it is borne in mind that in *Nevin* agt. *Ladue* the expression " fermented beer " is used in addition as in con-tradistinction to " strong beer," showing clearly that fer-mented beer is there intended as something different from

strong beer, or a beer which is not strong. In the *Board of Commissioners, &c., of Cayuga Co.* agt. *Freoff*, (17 *How. P. R.*, 442,) it was held at special term that "ale and strong beer" were included in the prohibition of the 13th section of the excise law of 1857. That case was decided in January, 1858. In the case of the *People* agt. *Crilley*, decided at the general term of the supreme court, in the 2nd district, in July, 1855, (20 *Barb. S. C. R.*, 246,) it was held that the sale of ale in quantities less than five gallons without a license was not prohibited by the excise law of the Revised Statutes.

The foregoing are all the reported cases decided in this State that I have met with, bearing upon the question under consideration. But I understand that in several of the districts, and particularly in the 6th, the supreme court have uniformly held, both at general and special terms, that the sale of ale and strong beer are within the excise law of the Revised Statutes, and that of 1857 ; and I am not aware that the case of the *People* agt. *Crilley, supra*, has ever been followed out of the 2d district.

But independent of any adjudications of the question, it seems to me entirely apparent that the legislature had in view, both in the excise law of the Revised Statutes, and in the statute of 1857, referred to, and particularly in the latter, the regulation of the sale of all and every kind of intoxicating liquors, and intended to prohibit their sale in quantities less than five gallons without the license provided for.

Among the various descriptions of liquors mentioned in the statute of 1857, the sale of which it undertakes to regulate, none are specified by name excepting wine, and that only by the general term, wine or wines, without describing in any way the kind of wine. In other respects descriptive words are employed to show the kind or character of liquors the sale of which, without license, is denounced. First, in the title of the act, it is to suppress

intemperance, and to regulate the sale of intoxicating liquors. Sections 2 and 6 use the expression, "strong and spirituous liquors and wines." Section 5 uses the words, "strong or spirituous liquors." Section 10, "any sort of strong or spirituous liquors or wines." Sections 11, 20, 25 and 27, "strong or spirituous liquors or wines." Sections 12, 13, 14, 15, 18 and 28, "any strong or spirituous liquors or wines." Section 12, "any strong liquors or wines." Section 15, "any strong or spirituous liquors." Section 19, "intoxicating liquors." Section 29, "imported or other intoxicating liquors;" also, "intoxicating liquors or wines." Section 31, "intoxicating drinks."

The ravages upon the physical, intellectual, and spiritual condition of our race by the habitual use of intoxicating beverages, together with the labors for the last forty years of benevolent and philanthropic individuals to arrest the scourge by efforts to produce a revolution in the sentiments, practices, and habits of the community in respect thereto, and the several legislative enactments with the same end in view, which have been the results of those labors and efforts, are all, as I think, matters of judicial cognizance, and are proper to be borne in mind and referred to in our examination to ascertain the meaning and true interpretation of the statute now in force on this subject.

In view of these considerations, it is quite apparent that the great and paramount object and design of the legislature, in the present statute, was to restrain, not by absolute and indiscriminate prohibition, but by a process of regulation, the habitual and intemperate use of any intoxicating beverage. In the language of the title of the act, it was to prevent intemperance. In looking through the act, we see that this was to be accomplished principally by regulating the sale of certain liquors in small quantities, and by particular and limited prohibitions of such sales. The liquors, the traffic in which was to be thus

regulated, were such as were known to be capable, when drank, of producing, and which generally resulted in partial or total intoxication.

Speculations have from time to time been indulged in, founded upon the percentage of alcohol which different kinds of beverages contain, as ascertained by chemical analyses; and attempts have been made to show that the character or strength of the liquor, the sale and use of which the statute was intended to regulate and repress, is to be governed by such percentage. But it seems to me but one safe and sensible line of distinction can be drawn between the different kinds of liquor containing alcohol, in order to determine upon which of them the statute was intended to operate, and that is, between those which are capable of causing intoxication and those containing so small a per centage of alcohol that the human stomach cannot contain sufficient of the liquid to produce that effect, as is said to be the case with spruce beer, ginger beer, lager beer, and some others. It must be strong liquor; that is, strong enough with the intoxicating principle or element, whether obtained by distillation or fermentation, to produce intoxication. If that be its character, the unlicensed vender, at retail or in quantities mentioned in the 13th section, incurs the penalty of the statute.

Now that ale, strong beer, porter, and most of the fermented drinks known in this country, and which are sold at public houses and groceries by the drink, can and do produce intoxication to a greater or less extent, and that such is the ordinary effect of their use as a beverage, no man of mature years, who is not strangely oblivious to surrounding and passing events, can have failed to observe. The fact is so patent that it is impossible to close our eyes against it. There is, in my opinion, one aspect in which the unrestrained sale of such liquors by the drink is far more injurious than that of distilled liquors. I allude to

the temptation it presents to the reformed or reforming inebriate, who will much more readily yield to a draught of the former than of the latter, and thus fall a hopeless victim to the appetite which he had well nigh conquered.

Upon the whole, it seems to me but little short of absurd to contend that the excise law now in force should receive the construction contended for by the appellant, which would leave at least one-half of the evil intended to be remedied entirely untouched and unprovided against.

For the foregoing reasons I am in favor of affirming the judgment of the supreme court.

Judgment affirmed.

COMSTOCK, J., and DENIO, J., dissented.

---

NOTE.—What disposition is to be made of *cider ?* If a person should call at a bar for a glass of " strong or spirituous liquors," the bar-keeper would not probably think to set him on a glass of cider, if he did even a glass of ale; and cider is well known to be intoxicating; to a certain extent at least. We knew, in boyhood, a man so addicted to intoxication on cider, that the neighbors used to say he would get drunk lying under a sour apple tree. Such a man would not need a sealer of weights and measures to gauge his stomach to determine and settle its legal capacity for holding alcohol. But seriously, we think the day of penal laws and statutes in reference to the sale or use of alcoholic liquors of any and all descriptions, is about gone by. So long, however, as these statutes are in force the courts will do the best they can in construing them. After all the severe battles over old alcohol for the last thirty or forty years, in which numerous victories have been won and lost, it still remains a matter of traffic and use, and perhaps to a greater extent than ever. Such a fact alone, indicates very clearly that a free, enlightened and intelligent people will no more be controlled by statute laws on the subject of their eating and drinking, than on the subject of their religious faith and practice.—REP.